## McKEON v. HEDGES.

No. 2515.    Decided January 19, 1915 (146 Pac. 286).

ESTOPPEL—GROUNDS—DISCLAIMING TITLE. A purchaser of two lots, who disclaimed any title to two adjacent lots, though included in the deed to him, and who admitted that the adjacent lots were included by mistake, and who never exercised any right over them, and who saw that permanent and valuable improvements were put on the adjacent lots by a third person acquiring title from the same grantor, and who made no objection thereto and did not assert any claim, was estopped to deny the title of the third person to the adjacent lots.

Appeal from District Court, Fifth District; *Hon. Joshua Greenwood*, Judge.

Action by P. B. McKeon against Harvey Hedges.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*Weber & Olson*, for appellant.

*J. W. N. Whitecotton* for respondent.

STRAUP, C. J.

This case involves the title and right of possession to lots 3 and 4, block 1, town of Milford, Beaver County. Both parties claim them. Both concede that in 1897 Thomas Bradfield owned them, as well as lots one and two in the same block. In that year a deed was made by Bradfield and his wife to the plaintiff. There is a controversy as to what was conveyed and intended to be conveyed by that deed. The deed which was recorded on its face shows a conveyance of the four lots. It is claimed by the defendant that the plaintiff purchased from the Bradfields only lots one and two, and that, when the deed was signed, it contained a description of only those lots, but that the additional description of lots three and four was inserted in the deed by some one unauthorized, after the deed was executed and delivered and before it was recorded, or, when the deed was read to the Bradfields for their signature, the description of only lots one and two was read to them, and hence they had no knowledge that it contained a description of lots three and four, if at that time it contained such a description, and that they at no time sold lots three and four to the plaintiff, did not receive anything from him for them, and did not in fact convey, nor had they intended to convey, them to him. This was denied by the plaintiff, who contended that he in 1897 had purchased the four lots as described in the deed, and that all of them were conveyed to him. Further defenses of estoppel and adverse possession were pleaded; also a counterclaim to quiet title in the defendant.

The case was tried to the court, who made, among others, findings to this effect: That the plaintiff acquired a deed of conveyance of the four lots from the Bradfields, but the intention of the grantors, when they executed the deed, was to convey only lots one and two. The deed, however, without their knowledge, included a description of lots three and four, and they thus executed the deed, believing that it was only a conveyance of lots one and two; that the plaintiff at no time had possession of lots three and four, nor any part thereof, and that the defendant and his predecessors were in the possession of the whole thereof, and made valuable improvements thereon, consisting of a substantial fence, a dwelling house,

and outbuildings; that the plaintiff at no time purchased lots three and four from the Bradfields, paid them nothing for them, and at no time made any claim whatever to them, until just prior to the commencement of this action; that before purchasing lots three and four the defendant, learning that the plaintiff on the record had some claim to them, went to him, informed him that he contemplated purchasing them, and asked him what, if any, claim he had to the lots, to which the plaintiff, in effect, replied that, notwithstanding the lots were described in his deed, he nevertheless had not purchased them, did not know how the description of them got in his deed, and that he made no claim whatever to them, and "told the defendant to go ahead and purchase them," and that relying on such statements and disclaimer, and not otherwise, the defendant purchased the lots for a valuable consideration, $400, and still relying upon the statements and the disclaimer, so made by the plaintiff, placed valuable and permanent improvements on the lots at a cost of $1,500; and that the plaintiff, though living on the adjoining lots one and two, and having personal knowledge of such improvements being made, made no objection, and made no claim to lots three and four, and asserted no right whatever in or to them.

Upon that the court stated conclusions that the defendant was the owner of lots three and four, was entitled to the possession of them; that the plaintiff was estopped from setting up or claiming any right, title, or interest in or to them; and that the defendant, under his counterclaim, was entitled to a judgment quieting the title in him. Such a judgment was entered, from which the plaintiff has prosecuted this appeal. The findings are assailed. We think they are supported by the evidence.

The Bradfields testified that they, in 1897, sold the plaintiff only lots one and two; that when the deed was read to them the description of only lots one and two was read; that they had no knowledge that the deed contained a description also of lots three and four; that the plaintiff purchased only lots one and two, and not three and four; and that only the former and not the latter, were conveyed. In 1898 the Brad-

fields sold lots three and four to Adolph Garzand. About
that time it was learned that they, as appeared by the deed
to the plaintiff, had conveyed those lots to him. Thereupon
Bradfield saw the plaintiff, stated to him that he had pur-
chased only lots one and two; that only those lots, and no
other, were intended to be conveyed to him; but that in some
manner it appears in his deed that lots three and four also
were then conveyed. He testified that the plaintiff then ad-
mitted the purchase of only lots one and two, and stated he
did not know that his deed contained a description of lots
three and four; that he would look the matter up and would
make it all right, and disclaimed all interest in lots three and
four. Garzand also saw him, and, as he testified, the plain-
tiff told him the same things. Lots three and four were then
sold and conveyed by the Bradfields to Garzand. He sold
and conveyed to J. T. Tanner, Tanner to John Kirk, in 1901,
Kirk to Ira H. Plummer, and Plummer, in 1905, to the de-
fendant. All of them, but Plummer, who was not called, testi-
fied that when they purchased, seeing on the record that the
lots had been conveyed to the plaintiff by the Bradfields, in-
quired of him what, if any, interest he had in those lots, and
that he disclaimed having any right, title, or interest whatever
in them, and to some of them that he did not know how the
description of lots three and four got in his deed. The de-
fendant testified that before he made his purchase he made
the same inquiries of plaintiff, and that the plaintiff made the
same disclaimers to him, and "stated there was some mistake
in his deed." The defendant asked him to give him a war-
ranty deed, to which the plaintiff replied that he could not
"give a warranty deed for what he did not own." The de-
fendant, as he testified, further stated:

"I explained that I only wanted this cleared up—the rec-
ord title—to make it so I could handle them. I asked him if
he would sign a quit-claim deed to them, and he said he would.
That was before I bought the lots."

The defendant thereupon purchased the lots from Plummer,
paying $400 for them, and received a deed of conveyance from
the Plummers, and went into possession of the lots. There-
after he presented a quit-claim deed to the plaintiff, who

refused to sign it, unless the defendant paid him the considera-
tion then demanded by the plaintiff. This the defendant· de-
clined to do.

It was further shown by the testimony of the defendant,
and his witnesses, his predecessors, that they had been in the
exclusive possession of lots three and four, and with the per-
sonal knowledge and acquiescence of the plaintiff, who resided
on the adjoining lots, made permanent improvements thereon
to the value of $1,500 or more, and that during all of that
time the plaintiff made no claim whatever as to any right,
title, or interest in or to those lots, or to any part thereof.
For the years 1901 and 1909, inclusive, except 1903 and 1904,
lots three and four were assessed to the defendant and his
predecessors, and all the taxes for those years were paid by
them. Kirk testified that he, upon a claim made by the plain-
tiff that he had paid the taxes for the year 1903, repaid him
those taxes. The taxes for the year 1904 were paid by one
J. S. Barrett. What he had to do with them, or on whose
behalf he paid them, is not made to appear. There were no
assessments for taxes on the lots prior to 1901.

Thus it is seen there is ample evidence to support the find-
ings and judgment of the court below. About all there is
against that evidence is the testimony of the plaintiff himself.
He testified that he purchased not only lots one and two, but
three and four as well, but that he did not see his deed until
1908, and until then, as he testified, did not know just what
lots were described in it. He denied making the disclaimers
testified to, denied the conversations with the parties, except
.with Bradfield and the defendant. He testified that Bradfield,
after the deed to the plaintiff, stated to him:

''There was something about the lots he did not understand;
said somebody said I was claiming lots three and four; and I
said I would investigate it as soon as I could. I said, 'If I
don't own the lots I will deed them back to you;' but I says,
'I don't remember anything about the deal just now.' He
went away satisfied, because I said if the lots were not mine
I would not want them, and, as soon as I could, I would
investigate it.''

He testified he had three conversations with Hedges, the defendant, and that he said something to him—"about the lots, and I told him I did not have time; I would see him again. I don't remember that he said anything about the deed being on record running to me covering those lots. I never told Hedges that it is a mystery as to how I got lots three and four in that deed. I didn't tell him that I didn't claim them. I always said that Bradfield said he made a mistake in deeding the lots to me, and if I found it was so I would deed them back to anyone that Bradfield would say, or to Hedges.  *  *  *  I told him if the lots did not belong to me I would give him a quit-claim deed for them, or if they belonged to me they would be mine."

He testified that he later had a further conversation with Hedges, and that:

"Hedges wanted me to sign a quit-claim deed, and I told Hedges from what I had learned about the deeds my expenses would be about seventy-five dollars, and that if he paid me half of seventy-five dollars I would give him a deed to the lots. I did not sign it because Hedges would not pay me anything."

The plaintiff did not dispute the possession of the defendant and of his predecessors, but in a way claimed that he, part of the time, was in possession of a part of lot three. He did not dispute that the defendant and his predecessors had paid the taxes on lots three and four, made no claim that he had paid them, or that he had asserted any claim to lots three and four upon seeing the improvements placed upon them.

The appellant contends that neither the findings nor the evidence bring the case within the principles of an estoppel, and as stated in 16 Cyc., 722. The reason given for this is that' the defendant, when he purchased, had both actual and constructive notice that on the record the plaintiff had acquired title to lots three and four by the conveyance from the Bradfields to the plaintiff; and that the defendant purchased upon the reliance that the plaintiff would give him a quit-claim deed  That but looks to a part and not to the whole of what was proved and found, and ignores the further proof of plaintiff's disclaimers, his admissions that there was a mistake in his deed, that he only purchased lots one and two, claimed

nothing for his deed as to lots three and four, and as to those exercised no right whatever under his deed, at no time was in possession of them, paid no taxes on them, except, perhaps, for the year 1903, which were refunded to him, saw permanent and valuable improvements put upon the lots without objection and without asserting any claim in or to them, promised to give the defendant a quit-claim deed, and then quibbled about it and refused to give it because the defendant would not pay him $37.50.

We think the case was correctly decided, and therefore the judgment is affirmed, with costs.

FRICK and McCARTY, JJ., concur.